FAIRFIELD TELEVISION ENTERPRISES, INC., STEVEN L. WINN, Tax Matters Person, and THE BECKLEY GROUP, INC., SUCCESSOR IN INTEREST TO FAIRFIELD TELEVISION ENTERPRISES, INC., STEVEN L. WINN, Tax Matters Person, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fairfield Television Enterprises, Inc. v. Commissioner
Docket No. 26372-90
United States Tax Court
T.C. Memo 1992-475; 1992 Tax Ct. Memo LEXIS 493; 64 T.C.M. (CCH) 544; August 19, 1992, Filed *493 Decision will be entered under Rule 155. For Petitioner: John P. Barrie. For Respondent: Donald L. Wells and Richard A. Witkowski. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined adjustments of $ 2,242,948 and $ 2,369,697 to the subchapter S items reported by Fairfield Television Enterprises, Inc., [1] an S corporation, for 1985 and 1986, respectively. After concessions, the issue remaining for decision is whether petitioner is entitled to deduct from gross income additions to a reserve for guaranteed debt obligations under section 166(f) [2] for tax years ended December 31, 1985 and May 31, 1986. FINDINGS OF FACT The case was submitted *494 fully stipulated under Rule 122. The stipulated facts, together with the attached exhibits, are incorporated herein by this reference. Fairfield Television Enterprises, Inc. (FTE), was an S corporation and maintained its principal place of business in Fairfield, Iowa, during the tax year ended December 31, 1985, and the short tax year ended May 31, 1986. The Beckley Group, Inc. (Beckley) is the successor in interest to FTE, and its principal place of business was also maintained in Fairfield, Iowa. On May 31, 1986, FTE merged with and into Beckley in a statutory merger. Petitioner was engaged in the business of selling home study courses in the United States and Canada. The majority of sales were consummated by telephone after purchasers viewed FTE's advertisements on television. As a seller of home study courses, FTE was a dealer in tangible personal property, i.e., an entity which regularly sells tangible personal property in the ordinary course of its trade or business. FTE accepted payments for purchases of the home study courses in the forms of cash on delivery and credit card sales. FTE entered into an agreement with the credit card companies wherein the companies were *495 authorized to charge FTE for the face amount of any sales slip should the cardholder request a credit. Beginning around September 1985 and through May 1986, FTE maintained a 6-month money-back guarantee on purchases of its home study courses. Prior to that time, FTE maintained a standard 30-day money-back guarantee. Because FTE guaranteed money back for goods returned within the specified time period and otherwise not accepted merchandise, it remained liable to the credit card companies for any returns or requests for credits. Pursuant to FTE's arrangement with the credit card companies, FTE had a legal duty to pay to the credit card companies funds due such companies as a result of a customer's exercise of its money-back guarantee policy. Consequently, FTE maintained a reserve for guaranteed debt obligations based on this obligation. FTE made a timely election pursuant to section 166(f) to establish such a reserve with respect to the amounts expected to be owed to the credit card companies on account of returns or nonacceptances of the home study course. FTE deducted additions to the reserve for guaranteed debt obligations for tax year ended December 31, 1985, in the amount *496 of $ 2,242,046, calculated as follows: Reserve as of February 4, 1985
$ 0          Additions to reserve
4,355,997 Amounts charged against reserve
(2,113,951)
Reserve balance at December 31, 1985
$ 2,242,046 Less opening balance
(0)
Deduction for additions to reserve
$ 2,242,046 In like manner, FTE deducted additions to the reserve for guaranteed debt obligations during the short tax year ended May 31, 1986, in the amount of $ 2,382,850, calculated as follows: Reserve as of December 31, 1985
$ 2,242,046 Additions to reserve
15,390,110 [3] Amounts charged against reserve (13,007,260)
Reserve balance at May 31, 1986
$ 4,624,896 Less opening balance
(2,242,046)
Deduction for additions to reserve
$ 2,382,850 In her notice of deficiency, respondent disallowed petitioner's claimed deductions for additions to the reserve for guaranteed debt obligations. The parties agree that if the Court finds that FTE is entitled to maintain a reserve for guaranteed debt obligations in accordance with section *497 166(f), the amounts calculated above, as shown on petitioner's return, are correct. The parties further agree that the other adjustments set forth in respondent's notices of final S corporation administrative adjustment are correct (i.e., professional fees, depreciation, and amortization). OPINION Respondent argues that petitioner is not entitled to a reserve for guaranteed debt obligations since petitioner is not a guarantor. Respondent asserts that there was no principal or substantive liability that petitioner guaranteed and the reserve was not a reserve for bad debts since, as a matter of law, deductions for anticipated losses due to the return of merchandise are disallowed. Section 166(f) permits a taxpayer who is a dealer in property a deduction for a reasonable addition to a reserve for bad debts arising out of his liability as a guarantor, endorser, or indemnitor on debt obligations incurred during the sale of tangible personal property in the ordinary course of his trade or business. A guarantor collaterally promises to answer for the debt of another. . *498 Petitioner contends that the arrangement with the credit card companies constituted a guaranteed debt obligation. When an FTE customer purchased a home study course by credit card, the customer became liable to the credit card company for payment. FTE guaranteed payment to the credit card companies of the customer's debt in the event the customer sought a credit from the credit card company. Petitioner further argues that since FTE was in fact obligated to repay the credit card companies, then it was in fact also indemnifying [4] the credit card companies during the money-back guarantee period.
Moreover, FTE contends that nothing in section 166(f) or the underlying regulation suggests that a guarantee limited to certain situations (e.g., claimed credits) is outside the scope *499 of section 166(f). FTE concludes its situation is unique and has not yet been addressed by this Court. For the reasons stated below, we disagree. In , this Court stated: On December 31 of each of the years, there was the possibility that a substantial quantity of the books [products] shipped in the year would be returned by merchants in the next year; but as of December 31 of each year, there was not a fixed and then determined obligation of petitioner to take back a certain quantity of unsold books [products] and pay refunds or allow credits in any fixed amount. Petitioner did not know at the close of each taxable year what amount of books [products] (out of sales made in the taxable year) would in fact be returned * * * for refunds or credits in the next year. * * * The same reasoning applies in this case. FTE certified that products were sold with an unconditional money-back guarantee for 6 months. FTE had no prescience as to how many, if any, products would be returned for refund during the periods in issue. It is well settled that a reserve to cover future or contingent liabilities *500 cannot be deducted. See . See also . Petitioner contends, nevertheless, that it was liable to the credit card companies for any return made for the 6-month period since FTE served as guarantor to the credit card companies. A guarantor collaterally promises to answer for the debts of another. . The sales in question were credit card purchases which created a debt obligation between the customer and the credit card company. No such obligation was ever created between FTE and the credit card companies. FTE did not promise that in the event of nonpayment on the part of the principal obligor, i.e., the customer, that it would pay the credit card companies, nor did FTE promise to pay the "debts" of the credit card companies. If a customer refused to pay his credit card bill, the credit card company had no recourse against FTE. Thus, FTE was not a guarantor. Only when a customer activated the money-back policy was *501 FTE liable to refund the credit card companies for moneys the credit card companies previously paid to FTE on that purchase. If the money-back policy was never utilized, FTE remained under no obligation. Thus, the reserve established by FTE and the amounts deducted were for contingent and future liabilities. This Court has consistently held that an accrual for anticipated returns in this situation is not permissible, either as an offset against gross sales, or as a deduction from gross income. See See also ; . We hold accordingly. In accordance with the above, Decision will be entered under Rule 155. Footnotes
1. For convenience, Fairfield Television Enterprises, Inc., and its successor in interest, the Beckley Group, Inc., will be referred to as petitioner. ↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. Petitioner listed this amount as "Recoveries". However, it appears to be the annual amount charged against the reserve. The net result remains unchanged.↩
4. In a contract of indemnity, the promisor agrees to "indemnify" the debtor personally against loss, creating a primary liability between the debtor and the promisor. .↩